IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | No. 1:12-cr-00006-yk-21 |
| v. : | |
| : | (Judge Kane) |
| OMAR CALIPH ACQUIL, : | |
| Defendant : | |

## MEMORANDUM

Before the Court is Defendant Omar Caliph Acquil's motion to suppress evidence in the above-captioned action, which is set for trial on October 7, 2013. (Doc. No. 356.) The motion has been fully briefed. The Court held a hearing on Defendant's motion on August 15, 2013. (Doc. No. 414.) For the reasons that follow, the Court will deny Defendant's motion.

## I. BACKGROUND

Having received a tip that a large-scale marijuana trafficker[1] was conducting business on the 1500 block of South 12th street in Harrisburg, Pennsylvania, members of the Dauphin County Drug Task Force arrived at that location at approximately 1:00 pm on October 10, 2011, to conduct surveillance from an unmarked cruiser. (Transcript at 4:17-22.) At approximately 2:00 pm, Detective Dickerson, a member of the Dauphin County Drug Task Force, observed a gold sports utility vehicle pull up and park on the east side of South 12th street, directly across from a purple minivan. Detective Dickerson then observed Defendant Omar Caliph Acquil emerge from the gold sports utility vehicle, cross the street, and get into the front passenger seat of the purple minivan. (Id. at 5:19-23.) After a few moments, Defendant exited the purple

---

[1] Defendant Omar Caliph Acquil is not the suspected large-scale marijuana trafficker on whom Detective Dale had received the tip. (Transcript at 4:23-25, 5:1-3.)

1

minivan and returned to his own vehicle. Detective Dickerson then ran the license plate of the gold sports utility vehicle, which was registered to an owner in Carlisle, Pennsylvania. (Id. at 8:17-18.)

After returning to his vehicle, Defendant pulled out of his parking space and began to travel north on South Twelfth street in the gold sports utility vehicle. Having become suspicious that a drug transaction had just occurred, Detective Dickerson followed Defendant's vehicle as it merged on Interstate Route 83-South, Route 581-West, and Interstate Route 81-South, where Defendant took the Middlesex exit in Cumberland County. At this point, Detective Dickerson contacted Detective Eric Dale of the Cumberland County Drug Task Force and requested that he stop Defendant's vehicle on account of Detective Dickerson's suspicion that Defendant was engaged in drug activity. (Id. at 11:9-13.) Detective Dale recognized the address to which Defendant's vehicle was registered as one his department was targeting for suspected drug activity, and, noted that a young female heroin user lived at that same address. (Id. at 35:11-20, 36:11-24.)

At approximately 2:20 pm, Detective Dale stopped Defendant's vehicle on North Bedford Street. (Id. at 38:1-5.) Detective Dale did not give Defendant a citation or warning for any traffic violation, but ordered him to exit the vehicle and questioned him. During this stop, Detective Dale claims that he smelled the odor of unburned marijuana. (Doc. No. 357 at 4, Transcript at 39:11-13.) Detective Dale then asked Defendant if he would consent to a search of the vehicle. (Transcript at 41:1-6.) Defendant refused. (Id.) Detective Dale subsequently contacted the K-9 unit, which was a few blocks away. (Id. at 41:13-17.) After a canine alerted on the vehicle, it was seized and impounded. (Id. at 42:6-9.)

2

The next day, as Detective Dale was preparing a search warrant application for the vehicle, Attorney Mike Palermo contacted Detective Dale and stated that he represented the registered owner of the vehicle that Defendant had been driving, Ms. Marsha Cassell. (Id. at 42:17-25.) After speaking with her attorney, Ms. Cassell consented to a search of her car, but specified that the jacket on the backseat was not hers. (Id. at 43:1-10.) During the search, law enforcement officers found a bag of crack cocaine and a bag of marijuana in a black jacket on the backseat of the gold sports utility vehicle. (Id. at 43:20-23.)

On July 25, 2012, Defendant was charged by superseding indictment in the above-captioned action: Count One, conspiring to distribute controlled substances in violation of 21 U.S.C. § 846; Count Two, distributing cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii); Count Five, conspiring to possess firearms in furtherance of drug trafficking, in violation of 21 U.S.C. § 846; and, Count Eight, forfeiture of property pursuant to 21 U.S.C. § 853(p). (Doc. No. 102.) Defendant pleaded not guilty to the counts with which he was charged. (Doc. No. 228.) On March 14, 2013, Defendant moved the Court to suppress evidence seized from the gold sports utility vehicle as fruits of an unlawful traffic stop. (Doc. No. 356.) On August 15, 2013, the Court held a hearing at which it received testimony from Detective Dale and Detective Dickerson. (Doc. No. 414.) Jury selection and trial is scheduled to begin on October 7, 2013. (Doc. No. 408.)

## II. STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution protects the public from "unreasonable searches and seizures." U.S. Const. amend. IV. As a result, a seizure must be effectuated with a warrant based on probable cause in order to comply with the Fourth

3

Amendment. United States v. Robertson, 305 F.3d 164, 167 (3d Cir. 2002) (citation omitted). One well-established exception to the Fourth Amendment's warrant requirement permits an officer to "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)).

The requirement of reasonable suspicion for a Terry stop-and-frisk applies with equal force to a traffic stop of a vehicle. Brendlin v. California, 551 U.S. 249, 251 (2007) ("When a police officer makes a traffic stop, the driver of the car is seized within the meaning of the Fourth Amendment."). Thus, traffic stops, as a subset of investigative detentions, are governed by the "reasonable suspicion" standard. United States v. Delfin-Colina, 464 F.3d 392, 397 (3d Cir. 2006). To determine whether an officer possessed reasonable suspicion to conduct a traffic stop, the Court must consider the totality of the circumstances to see whether the officer had a "particularized and objective basis" for suspecting wrongdoing. United States v. Arvizu, 534 U.S. 266, 273 (2002); United States v. Silveus, 542 F.3d 993, 1000 (3d Cir. 2008). When determining what is reasonable, the Court applies an objective standard, looking at whether "the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the search was permissible." United States v. Harrison, 689 F.3d 301, 309 (3d Cir. 2012)(citation omitted).

"On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." United States v. Ritter, 416 F.3d 256, 261 (3d Cir. 2005). The Court reviews the proponent's submissions under the preponderance of the evidence standard. United States v. Matlock, 415

4

U.S. 164, 178 n.14 (1974). It is well-settled that the credibility of the witnesses, and the weight of the evidence along with the inferences, deductions, and conclusions to be drawn therefore, are matters to be determined by the trial judge at a hearing on a motion to suppress. See United States v. Staten, 181 F. App'x 151, 156 (3d Cir. 2006) (citing Gov't of Virgin Islands v. Gereau, 502 F.2d 914, 921 (3d Cir. 1974)).

### III. DISCUSSION

Defendant argues that the evidence seized during the search of the gold sports utility vehicle should be suppressed because Detective Dickerson did not witness anything illegal occur on South Twelfth street that would create reasonable suspicion of criminal activity, and thus the stop was unlawful. (Doc. No. 357 at 5.) Had Detective Dickerson observed activity giving rise to reasonable suspicion, Defendant argues that Detective Dickerson would have stopped him in Dauphin County, rather than following him to Carlisle, Pennsylvania, and then requesting that Detective Dale stop Defendant. (Id. at 6.) In response, the Government argues that Detective Dale's stop of Defendant was supported by reasonable suspicion because Detective Dickerson observed behavior on South Twelfth street that was consistent with a drug transaction, and, Detective Dale had received reports of suspected drug trafficking at the address to which the vehicle Defendant was driving was registered. (Doc. No. 373 at 7.) Accordingly, the Government maintains that under the totality of the circumstances, the traffic stop was lawful.

The law is clear that an officer must possess "reasonable suspicion" that criminal activity is afoot to make a traffic stop, which requires the officer to articulate a "sufficiently particularized and objective basis" for her suspicion of criminal activity. See Arvizu, 534 U.S. at 274. Courts review the "totality of the circumstances" to determine whether the officer's

5

suspicion that Defendant was involved in criminal activity rises above a "mere hunch."[2] United States v. Mathurin, 561 F.3d 170, 174 (3d Cir. 2009) ("Reasonable suspicion is just that: suspicion that is reasonably based on the totality of the facts and circumstances."). When evaluating whether reasonable suspicion existed for the stop, the Court must assess the relevant factors from the viewpoint of law enforcement officers, which involves dealing not with "hard certainties," but, instead, with "probabilities." Id. (citation and internal quotation marks omitted).

As an initial matter, the Court recognizes that both police officers involved in Defendant's traffic stop had significant experience working on drug investigations, and therefore were well-qualified to assess the significance of Defendant's behavior. See United States v. Nelson, 284 F.3d 472, 482 (3d Cir. 2002) (giving "great deference to the officer's knowledge of the nature and the nuances of the type of criminal activity that he had observed in his experience"). Detective Dickerson, who observed the initial exchange between Defendant and the individual in the parked purple minivan, had previously worked as an undercover officer with the Dauphin County Drug Task Force.[3] (Transcript at 6:6-23.) During his time working undercover, Detective Dickerson had been involved in drug transactions that exactly matched Defendant's behavior: "I would get out of a vehicle, get into a vehicle with someone for only a couple minutes, and then exit the vehicle after doing the drug exchange, and then I would get in my vehicle and drive away." (Id. at 7:21-25, 8:1-10.) Consistent with this experience,

---

[2] See United States v. Arvizu, 534 U.S. 266, 274 (2002) ("Our cases have recognized that the concept of reasonable suspicion is somewhat abstract . . . . [b]ut we have deliberately avoided reducing it to a neat legal set of rules.").

[3] Detective Dickerson had made two arrests for drug trafficking on the same street he observed Defendant entering the purple minivan, and several more arrests in the general area for drug offenses. (Doc. No. at 9.)

Detective Dickerson testified that because Defendant "just came into Harrisburg for a brief minute, interacted with somebody in another vehicle that didn't even get out of the vehicle," and then drove away, Detective Dickerson became suspicious that a drug transaction had occurred. (Id. at 8:16-24.)

Likewise, Detective Dale, who has eight years of experience as a narcotics detective, testified that he had been involved in "over a thousand" drug investigations, and was thus well-equipped to assess the significance of Defendant's behavior. (Id. at 36:1-4.) After Detective Dickerson contacted him about his suspicion that Defendant had been involved in a drug transaction, Detective Dale recognized Defendant's vehicle's registration address as one being targeted for investigation because neighbors had complained about "a lot of foot traffic, a lot of vehicle traffic at odd hours, later in the evening." (Id. at 35:11-20.) Detective Dale testified that, in his experience, the complained-of behavior at the registration address was "consistent with drug activity or drug sales." (Id. at 36:19-20.) Detective Dale also had personal knowledge that a known heroin user lived at the address to which the car was registered. (Id. at 37:9-12.)

Analyzing the above factors under the totality of the circumstances, the Court finds that the officers possessed reasonable suspicion when they stopped Defendant. Based on Detectives Dale and Dickerson's testimony at the suppression hearing, it is clear that the officers had a particularized and objective basis for suspecting that Defendant was involved in a drug transaction when he was stopped. First, Detective Dickerson and Detective Dale each had extensive experience with drug trafficking, meaning that both officers could use "their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." See

7

Arvizu, 534 U.S. at 273. Second, the fact that Detective Dickerson had previously participated as an undercover officer in drug transactions that exactly matched the behavior in which he saw Defendant engage bolsters the Government's argument that reasonable suspicion existed for the stop. So does the fact that Detective Dickerson had previously made two arrests for drug trafficking on the same street. See United States v. Brown, 159 F.3d 147, 149 (3d Cir. 1998) ("Deference . . . is given to the officer's conclusions based on the officer's experience.").

Moreover, although the Court recognizes that Defendant's behavior on South Twelfth street is capable of innocent explanation, the fact that Detective Dale recognized that Defendant's vehicle was registered to an address being targeted for drug trafficking served to "eliminate a substantial portion of innocent travelers." See United States v. Whitted, 541 F.3d 480, 490 (3d Cir. 2008) (citation and quotation marks omitted).[4] So did the fact that Detective Dale was aware that a known heroin user also lived at the vehicle's registration address. See Brown v. Texas, 443 U.S. 47, 52 n.2 (1979) (observing that a trained investigator may be "able to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person") (internal quotation marks omitted); Mathurin, 561 F.3d at 178 ("[The officer's] description and evaluation of the evidence, substantiated by his clearly articulated commonsense inferences, bolster the Government's argument that the agents had reasonable suspicion to search the [vehicle]") (internal citation and internal quotation marks omitted). Thus, viewed in their entirety, the facts support finding that reasonable suspicion

---

[4] Although individual factors at play may be innocent in isolation, together they must "eliminate a substantial portion of innocent travelers." Karnes v. Skrutski, 62 F.3d 485, 493 (3d Cir. 1995) (rev'd in part on other grounds); see also Arvizu, 534 U.S. at 277 (noting that "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct").

8

existed for the traffic stop.

## IV. CONCLUSION

The Court finds that reasonable suspicion existed for Detective Dale's stop of Defendant. Accordingly, Defendant's motion to suppress (Doc. No. 356) will be denied. An order consistent with this memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | No. 1:12-cr-00006 |
| v. | : | |
| | : | (Judge Kane) |
| OMAR CALIPH ACQUIL, | : | |
| Defendant | : | |

# **ORDER**

**AND NOW**, on this 17th day of September 2013, **IT IS HEREBY ORDERED THAT** Defendant's motion to suppress (Doc. No. 356) is **DENIED**.

                                                        s/ Yvette Kane
                                                        Yvette Kane, District Judge
                                                        United States District Court
                                                        Middle District of Pennsylvania